IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DALILA ORDONEZ                          *
                                        *
            v.                          *      Civil No. JFM-05-2836
                                        *
NORFIELD INDUSTRIES, ET AL.             *
                                     *****

OPINION

Dalila Ordonez lost four fingers and part of her thumb when she was using a double end trim saw during the course of her employment with Masonite Corporation.  She has brought this action against Norfield Industries, Inc., the manufacturer of the saw, alleging that Norfield failed to include a blade guard when the saw was in the down position.  She also has named as a defendant Georgia-Pacific Corporation, the original purchaser of the saw.  She asserts as an alternative theory that the saw initially had a blade guard in the down position but that Georgia-Pacific removed it.

After using the saw for approximately five years at its Frederick, Maryland plant, Georgia-Pacific Corporation sold the saw, along with all other assets of the plant, to Masonite's parent corporation, Premdor U.S. Holdings, Inc.  Georgia-Pacific has now filed a motion to dismiss based upon the "occasional seller doctrine."  Ordonez has opposed Georgia-Pacific's motion and has also filed a motion for leave to file an amended complaint to include a failure to warn claim.  Both motions will be granted.

I.

The "occasional seller" doctrine provides that the only duty owed by an entity that is not in the business of selling a particular product and only sells the product "occasionally" or "casually" is to warn the purchaser of known dangers that are not obvious or readily discernable.

*See, e.g., Mayan v. Chemetron Investments, Inc.*, 2000 WL 33364121, *5 (S.D. Iowa 2000); *McCabe v. Allied Products Corp.,* 2000 WL 1805687, *8 (D. Me. Dec. 8, 2000); *Clute v. Paquin*, 219 A.D.2d 783 (N.Y. App. 1995); *Sukljian v. Charles Ross & Son Co.*, 503 N.E. 2d 1358, 1362 (N.Y. 1986) (holding that "[a]t most, the duty of a casual or occasional seller would be to warn the person to whom the product is supplied of known defects that are not obvious or readily discernable.").

Georgia-Pacific was not in the business of selling double end trim saws and sold the saw in question to Premdor only as a part of the sale of the assets of its Frederick plant.  Ordonez does not dispute these facts but, instead, contends that the Maryland Court of Appeals has not expressly adopted the "occasional seller" rule.  The Court of Appeals has, however, adopted §§402A and 388 of the Restatement [Second] of Torts from which the rule is derived.  *See Phipps v. General Motors Corp.*, 363 A.2d 955 (Md. 1976) (adopting §402A); *Moran v. Faberge, Inc.*, 332 A.2d 11 (Md. 1975) (citing §388 in imposing a duty on the manufacturer to warn of latent dangers of all reasonably foreseeable product uses).

Section 402A creates a distinction in strict liability between the liability imposed on those sellers who are "engaged in selling" the product at issue and those sellers who are not engaged in that business.  RESTATEMENT [2D] OF TORTS, § 402A.  A seller is strictly liable for harm caused by a defective product only if "the seller is engaged in the business of selling such a product".  *Id.*  The rule imposes liability on those engaged in the business of selling a product because of the "responsibility to the public undertaken by the seller of an unsafe product and 'the forced reliance upon that undertaking on the part of those who purchase the goods.'" *Id.*, comment f; *Bruce v. Martin-Marietta Corp.*, 544 F.2d 442, 448 (10th Cir. 1976) (refusing to

impose strict liability on an airline that was the intermediate seller of a defective plane on the basis that it "owed no duty to the subsequent purchaser or to those to whom that purchaser sold transportation").  A defendant who supplies a product as its business leaves a purchaser with the impression that because it is a professional supplier, the product is safe and reliable.  The courts have recognized that the public does not have the same expectations when buying from so-called occasional sellers.  *Sukljian*, 503 N.E.2d at 1361.  As one court has explained, "where distribution of an allegedly defective product is incidental to defendant's regular business the principles of strict products liability have no relevance."  *Id.* (citing *Gobhai v. KLM Royal Dutch Airlines*, 442 N.E.2d 61 (N.Y. 1982)).

Section 388, in turn, addresses a seller's duty to warn a buyer of dangers.  RESTATEMENT [2D] OF TORTS, § 388.  This applies to any and all sellers, but it requires a warning only if the seller "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition."  *Id.*; *Moran*, 332 A.2d at 16 (noting that "it would be totally unreasonable to require that a manufacturer warn against every injury which might ensue from a mishap in the use of its product, no matter how ... obvious or well known is the danger").  Read together, these sections indicate that strict liability for a defective product is available only against a regular seller, and that all sellers generally are liable in a negligence-based failure to warn action only where the dangerous condition is not open or obvious.

Ordonez cites *Babylon v. Scruton*, 138 A.2d 375 (Md. 1958), and *Twombley v. Fuller Brush Co.*, 158 A.2d 110 (Md. 1960), in arguing that Maryland would not adopt the occasional seller rule.  According to Ordonez, these cases establish that all sellers owe a broad duty to make a product safe for use.

3

In *Babylon* the court found that such a duty is imposed where the sale is "for the supplier's business purpose." 138 A.2d at 377. *Babylon* predated the enactment of § 402A of the Restatement (Second) of Torts, and its holding appears to presage the rule the Restatement later incorporated. However, Georgia-Pacific's sale of the assets of its Frederick plant was "for a business purpose" and therefore *Babylon's* language could be viewed in the abstract as imposing upon Georgia-Pacific a duty to make the saw safe. But such a duty would seem to be extraordinary and unsupported by public policy where, as here, a second-hand sale by a previous user is involved. Moreover, both in *Babylon* and *Twombley*, the court was addressing the purported distinction between the duty of a manufacturer and the duty of a seller regularly supplying a product rather than the distinction material in this case: between a regular seller's duty and an occasional seller's duty. In my judgment, this difference is crucial and demonstrates that Ordonez is overreading *Babylon* and *Twombley* in asserting that they stand for the proposition that all sellers owe the same duty of care, regardless of the extent to which sales of the product in question constitute a particular seller's regular business practice.

## II.

Ordonez seeks leave to file an amended complaint for the purpose of asserting a failure to warn claim. As indicated above, an occasional seller does owe the purchaser of a product a duty to warn of known defects that are not obvious or readily discernable. Thus, Ordonez's motion for leave to amend will be granted.

It is to be noted, however, that any duty owed by Georgia-Pacific was owed to Premdor, the purchaser of the saw, not to Ordonez herself. A report prepared by Ordonez's own expert engineer, attached as an exhibit to her opposition to Georgia-Pacific's motion to dismiss, reflects

4

that the double end trim saw was "used to cut door casing molding to various prescribed lengths" and that Masonite is in the business of manufacturing pre-hung door assemblies.  Thus, it appears that Masonite may well be a "sophisticated user."  If that is so, Georgia-Pacific would be insulated from liability because of its alleged failure to warn.  *See, e.g.*, *Higgins v. E.I. Dupont de Nemours & Co., Inc.*, 671 F.Supp. 1055, 1059 (D. Md. 1987) (applying the sophisticated user defense under Maryland law); *Kennedy v. Mobay Corp.*, 601 A.2d 123 (Md. 1992) (the Court of Appeals affirming the lower court's application of the sophisticated user defense).

Accordingly, if she does file an amended complaint, Ordonez must allege facts (to the extent that she can do so under Fed. R. Civ. P. 11) that would negate Masonite's status as a sophisticated user or demonstrate that its status as such is immaterial to Georgia-Pacific's asserted liability.

A separate order effecting the rulings made in this Opinion is being entered herewith.


Date: March 15, 2006                    /s/_____
                                        J. Frederick Motz
                                        United States District Judge

5